# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## M'Kibbin's Estate.

*Decedent's estates—Advancements—Intestacy—Will.*

Notwithstanding the general rule that advancements, strictly speaking, are confined to cases of intestacy, it is well settled that they may exist though subsequently a will is made by the parent, and in such cases it depends on the will how such charges are to be considered.

Where a mother makes an advancement to a son and takes from him a note payable at her decease out of his interest in her estate, and subsequently the mother makes a will in which she carefully considers the subject of advancements to her children, provides what should be taken as advancements, the amount of them, and the parties from whose shares they should be deducted, and then provides in explicit terms that "subject to the advancements . . . . heretofore mentioned," there should be an equal division of the estate among children mentioned, the estate will be distributed without regard to the note. In such a case the note although an advancement at its inception was plainly canceled by the testatrix.

Argued June 1, 1903. Appeal, No. 4, May T., 1902, by the Real Estate Trust Company of Philadelphia, from decree of O. C. Fulton Co., affirming report of auditor in estate of Sarah I. M'Kibbin, deceased. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Exceptions to auditor's report.

John P. Sipes, Esq., auditor, found the facts to be as follows:

Sarah I. M'Kibbin died November 13, 1890, having made her last will and testament, dated January 18, 1887, and three codicils thereto, the first dated January 21, 1887, the second

May 7, 1887, and the third June 7, 1888, which will and codi-
cils were duly probated and filed in the register's office of
Fulton county, February 7, 1891, and letters thereon granted
to Dr. Wm. L. M'Kibbin and George M'Kibbin, two of the
executors named, H. C. M'Kibbin, the third executor named,
having renounced.

The testatrix, during her lifetime, was seized of lands
in Fulton and Bedford counties which she conveyed in fee
simple to her children, and in item six, paragraphs one and two
of the will directs, that " in the final settlement of my estate "
these lands shall be treated as advancements to her children
and the children of her deceased son and daughter, Alexander
M'Kibbin and Elizabeth T. Taylor, at $1,000 per tract for the
Bedford county lands, and at the rate of $5.00 per acre for
the Fulton county lands.   The executors have not charged
themselves with these advancements but ask that they be set-
tled in the distribution at this time.

The testatrix, at the time of her death, held notes of cer-
tain of her children as follows : one of George M'Kibbin for
$2,000, payable " at my decease to be taken out of his share of
my city property after my decease."   One of Maggie L. Charl-
ton for $1,000, payable "          after date " and indorsed in
the handwriting of the testatrix.   " This note is without in-
terest," (signed) S. I. M'Kibbin.   One of H. C. M'Kibbin for
$500, payable "          after date," and indorsed in the hand-
writing of Mrs. M'Kibbin.   " This note is without interest,"
(signed) S. I. M'Kibbin; a second one of H. C. M'Kibbin,
dated February 2, 1888, for $1,000, payable one year after date
with interest at five per cent, showing no indorsements.   One
of Alexander M'Kibbin, the material part of which is as fol-
lows : " $2,100          I acknowledge to owe and stand indebted
to S. I. M'Kibbin heirs or assigns, in the sum of $2,100 without
defalcation, for value received.   Payable as follows : At my de-
cease to be taken out of my share of her city property after her
decease," etc., and in the printed portion of the note, in the
clause, " with interest as aforesaid," the word " interest" is
marked through with ink and immediately above the word so
marked the word " out " is written in ink.   The note has a
seal to the signature.   The testatrix makes no mention of any
of the notes against her children in her will and codicils.

Alexander M'Kibbin died January 27, 1886, at his home in Fulton county, and letters of administration upon his estate were duly granted to Dr. Wm. L. M'Kibbin and George M'Kibbin, whose second and final account was confirmed by the orphans' court of Fulton county, January 10, 1890. Alexander left surviving him five children, namely: Alexander, John, George, Ella and Clara T.

The most valuable real estate of which the testatrix died seized was the two Philadelphia properties, one known as the Chestnut street and the other as the Broad street property: These properties, by item six, paragraph 4 of her will, she gave to her executors, in trust, to rent and invest the net income for a period of five years from her decease.

At the expiration of five years from her death she directed these properties to be sold, and subject to the advancements in lands, the division of " the net purchase moneys of the said Philadelphia county properties, the accrued rents and income therefrom, and all other the rest and residue of my estate which may be in their possession," into eight equal parts, and the payment and delivery of one of the equal eighth parts to Wm. L. M'Kibbin, George M'Kibbin, Harry C. M'Kibbin, Mattie M. Lafferty, Maggie L. Charlton and Sarah I. Spade, each, respectively. Of one other eighth part $500 were to be paid to Mary Elizabeth Taylor, if she survives to the period of distribution, and the balance of said eighth part divided equally between Edward T. Taylor and Francis M. Taylor. The other eighth part was given to the Real Estate Trust Company of Philadelphia, in trust for the children of Alexander M'Kibbin, deceased.

The Real Estate Trust Company of Philadelphia, trustee of the minor children of Alexander M'Kibbin, deceased, objects to the cestui que trustent being charged with the $2,100 note given by Alexander M'Kibbin.

This note was expressly made payable out of Alexander's share in his mother's city property at her death. It may be argued that this was not an advancement, because advancements are confined to estates of intestates as said in the case of Newell's Will, 1 Browne, 311, cited in 1 Rhone's O. C. 66, note 5; and because of the general rule that if the parent take a note or bond for the repayment of the money, with or without in-

terest, it is presumed to be a debt and not an advancement; High's Appeal, 21 Pa. 283; Roland v. Schrack, 29 Pa. 125. But where the note or bond taken by its terms makes the money given an advancement, if not in express words yet in effect, all presumptions are overruled. And this is what we regard Alexander's note as clearly showing. Suppose the testatrix had charged upon a family book the $2,100 to Alexander instead of taking the note she did, there could be no question as to its nature. Or suppose she had taken a writing from Alexander expressly setting out that he had received from his mother $2,100 " as an advancement " on account of his share in the estate, could there be any question about it? Certainly not. The note taken by her is only so in form. It could not have been collected of Alexander except in the way expressly provided and if his share in his mother's estate amounted to nothing he, or his estate, could not be called upon to pay.

But it is further contended that granting it to be an advancement the decedent, having made a will after the death of her son Alexander in which she bequeathes the one eighth of her residuary estate to the children of Alexander, they cannot be charged with the same. This argument concedes that if the testatrix had died intestate Alexander's heirs would take their share diminished by the sum advanced to their father. It is important to remember the declared principle of equality which runs through the whole will. In the sixth item she says: " I am desirous that all my children shall share equally in the distribution of whatever property I have been or hereafter may be possessed, such of them as are deceased being represented by the children they have left to survive them." She might have said in express words that the share of Alexander's children was to be diminished by the principal of the note she held against him but taking the whole will with its expressed idea of equality, and particularly the language above quoted, we think the intention is sufficiently expressed.

The $2,100 is taken as an advancement and so treated in the distribution. The objection is overruled.

The court confirmed the auditor's report

*Error assigned* was in confirming the report.

*Joseph DeF. Junkin,* with him *Geo. B. Daniels,* for appel-

lant. Advancements are confined to the estates of intestates: Newell's Will, 1 Browne, 311. Agreeing for the sake of the argument, that the payment to Alexander was intended as an advancement at the time it was given (for advancements depend on the intention of the parent at the time of making the gift: King's Estate, 6 Whart. 370 ; Weaver's Appeal, 63 Pa. 309 ; Christy's Appeal, 1 Grant, 369), still the doctrine of advancements has no application, because the testatrix in her will makes no reference to the gift or loan to her son. If a donor dispose of his whole estate by will, the doctrine of advancements has no application, unless the will specifically refers to advancements and defines what previous gifts shall be so considered : Watson v. Watson, 6 Watts, 254 ; Kreider v. Boyer, 10 Watts, 54 ; Nevins's Est., 70 Pa. 410 ; Harris's Appeal, 2 Grant, 304 ; Roland v. Schrack, 29 Pa. 125 ; Strock's Est., 158 Pa. 355.

Though in cases of testacy there is no technical advancement, nevertheless, a testator may provide in the will or aliunde the same equality of distribution of the estate which is accomplished by technical advancements in cases of intestacy: Schneider's Appeal, 16 Pa. 407. Existing debts may be converted into advancements by will : Haverstock v. Sarbach, 1 W. & S. 390; Green v. Howell, 6 W. & S. 203; Levering v. Rittenhouse, 4 Wh. 130 ; Yundt's Appeal, 13 Pa. 575 ; Porter v. Allen, 3 Pa. 390.

*W. Rush Gillan*, with him *W. Scott Alexander*, for appellees.

OPINION BY MR. JUSTICE MITCHELL, July 9, 1903 :

Notwithstanding the general rule that advancements, strictly speaking, are confined to cases of intestacy, it is well settled that they may exist, though subsequently a will is made by the parent, and in such cases it depends on the will how such charges are to be considered : Watson v. Watson, 6 Watts, 254 ; Wright's Appeal, 89 Pa. 67.

The note involved in this case is a sealed acknowledgment of indebtedness " payable as follows, at my decease to be taken out of my share of her city property after her decease." Notwithstanding the patent ambiguity of this language and what-

ever construction might be given to it, the money at the time of making the obligation was clearly regarded as an advancement. But it is almost equally clear that when she made her will subsequently, the testatrix had changed her intention in regard to this money. Her son Alexander, the maker of the note, had died, and in her will she made express provision for his children. Moreover she had considered the subject of advancements, and gave explicit directions concerning what should be so treated and the amounts, and these directions included by name the children of Alexander. Thus after reciting that she was possessed of real estate in Bedford, Fulton and Philadelphia counties, and had conveyed portions of it to various of her children, she directed " that the Bedford county lands so divided among them shall be treated as advancements to my said sons William, George, Harry and to the children of my son Alexander (now deceased) each, of one thousand dollars in the final settlement of my estate as hereafter provided," and " that the Fulton county lands so divided among them shall be treated in the final settlement of my estate as hereinafter provided, as advancements to my surviving children, and to the children of my deceased children respectively, Alexander and Elizabeth, at the rate of five dollars per acre." In the subsequent part of the same item she devised the Fulton county lands to her three surviving sons, subject as aforesaid, and the real estate in Philadelphia to her executors in trust to sell, etc., and " subject to the advancements to my children in land as heretofore mentioned and at the same price designated by me, either already taken or to be taken after my decease, I direct my executors to divide the said net purchase moneys of the said Philadelphia county properties, the accrued rents and income therefrom, and all other the rest and residue of my estate which may be in their possession, into eight equal parts, and to pay over and deliver one of said equal eighth parts to each of my children," naming the six survivors, one other eighth in trust for a granddaughter and the remaining eighth in trust for the children of Alexander.

It thus appears that after the making of the advancement to Alexander, evidenced by the note in controversy, the testatrix made her will, in which she carefully considered the subject, provided what should be taken as advancements, the

amount of them and the parties from whose shares they should be deducted, and then provided in explicit terms that "subject to the advancements . . . . heretofore mentioned" there should be an equal division of the estate inter alios, to the children of Alexander, represented here by the appellant. In the face of the express consideration and settlement of the subject by the testatrix herself, we are not at liberty to add anything to it. Viewing the note as an advancement at its inception, the testatrix has plainly canceled it as such and directed a distribution to the maker's children without regard to it.

The learned auditor and the court below were guided by the expressed intent of the testatrix to make an equal division of her estate among her children. But they failed to give sufficient weight to the fact that she had herself indicated what she considered equality. Whether the lands in Bedford county previously conveyed to her sons respectively were of equal value, and whether $5.00 an acre was the actual value of those in Fulton county, does not appear nor is it at all material. The testatrix fixed those values and directed that subject to them the distribution should be equal. She thus closed all further inquiry as to her intent with regard to equality.

Decree reversed and distribution directed to be made in accordance with this opinion.